NELS P. JOHNSON, Trustee, Appellant, v. HAROLD G. WARRINGTON et al., Appellees.

No. 40889.

FEBRUARY 16, 1932.

G. C. Stuart, for appellant.

O. M. Slaymaker, and R. E. Killmar, for appellees.

STEVENS, J.—Appellees are husband and wife.

On September 16, 1929, the husband executed a bill of sale conveying all of his personal property, consisting of live stock, grain and farm implements, to his wife. On the same day, he conveyed his undivided one-ninth interest in a tract of 440 acres of land by warranty deed to her. More than four months after these conveyances were made, the grantor filed a petition in voluntary bankruptcy and was adjudged a bankrupt. The petition in this case charges that the said conveyances were without consideration and for the purpose of hindering, delaying and defrauding creditors, and asks that the same be cancelled and held for naught. The answer admitted several paragraphs of the petition, but denied the allegations of want of consideration and fraud.

The law is well settled that the husband may, in good faith, prefer his wife as a creditor, and a conveyance of his property to her in good faith for a valuable consideration and without fraud will not be set aside at the suit of creditors. Dickinson v. Davis, 171 Iowa 29; Hinkle v. Downing, 116 Iowa 693; Banning v. Purinton, 105 Iowa 642; State Bank v. Schutt, 174 Iowa 583; Nicholas & Shepherd v. Higby, 35 Iowa 401; Crenshaw v. Halvorson, 183 Iowa 148; Harvey v. Phillips, 193 Iowa 231; Carlisle v. Milliman, 199 Iowa 949; Clark v. Clark, 209 Iowa 1179; First Nat. Bank v. Hartsock, 202 Iowa 603; Sly v. Bell, 131 Iowa 184.

The law is equally well settled that a voluntary conveyance by a debtor of his property to hinder, delay and defraud his creditors, or a conveyance thereof, even though for a consideration, if in fact fraudulent, and the grant is accepted by the grantee with notice and participation of the grantor's fraudulent purpose, may be set aside at the suit of a creditor. Dimick v. Munsinger, 207 Iowa 354; Brittain D. G. Co. v. Plowman, 113 Iowa 624; Henny Buggy Co. v. Patt, 73 Iowa, 485; Coldren Land Co. v. Royal, 140 Iowa 381; Shaw & Kuehnle v. Manchester, 84 Iowa 246; Sly v. Bell, supra; Crary v. Kurtz, 132 Iowa 105; Webber v. King, 205 Iowa 612; Leach v. Edgerton, 203 Iowa 512.

The decisive question in this case is one of fact. Appellant called both of the defendants and examined them as witnesses in his own behalf. Substantially, their testimony was all the

appellant introduced. Before reviewing the testimony in detail, it may be well to consider the probative effect which may be given to the testimony of these witnesses.

It is suggested at this point that, having called his adversaries as witnesses in his own behalf, the appellant is bound by their testimony. This is not an accurate conception of the rule. It is true that by offering testimony of these witnesses, appellant vouched for their credibility, and may not impeach their testimony by any of the common and usual methods of impeachment. Lawton Sav. Bank v. Bremer, 205 Iowa 334; Bihlmeier v. Budzine, 201 Iowa 398. That is, the party calling his adversary as a witness may not introduce testimony for the purpose of showing that he has a bad reputation for moral character or for truth and veracity. Thorn & Stein v. Moore, 21 Iowa 285. Nor is it permissible for him to introduce testimony of prior contradictory statements for the purpose of impeachment. Smith v. Dawley, 92 Iowa 312, State v. Cummins, 76 Iowa 133. None of the rules thus stated bar the party calling his adversary as a witness from introducing the testimony of other witnesses for the purpose of proving other facts, notwithstanding they may directly conflict with the testimony given by the adversary. Benton Co. Sav. Bank v. Strand, 106 Iowa 606; Thorn & Stein v. Moore, supra; Clapp Bros. & Co. v. Peck, 55 Iowa 270; McDonald v. Smith, 102 N. W. (Mich.) 668; Ingersoll v. English, 49 Atl. (N. J.) 737.

The testimony elicited from other witnesses in contradiction of the testimony of an adversary is not offered or received for the purpose of impeachment, but is admissible by virtue of the substantive law which secures to every litigant the right to prove the charges of his petition if he can. 5 Chamberlayne on Evidence, Sec. 3745.

The party calling his adversary as a witness is not strictly bound either by his affirmative statements or by denial or negation of assumed facts. The credibility and probative value of the testimony of an adversary are subject to proper analysis, comparison with other testimony, with the physical facts, the circumstances shown in evidence and in the light of common experience and with due regard to the nature of the transaction or facts sought to be proven. The evidence must be analyzed, interpreted and considered as a whole. Every proper inference

may be drawn therefrom. Fraud is not ordinarily easily proven. Frequently, there are shown in such cases relationships, motives, indirect facts and circumstances commonly known as badges of fraud. Badges of fraud, so-called, are, however, evidential only, are of varying probative value, subject to explanation, and, therefore, not necessarily conclusive. Hassell v. Bunge, 139 Pac. (Cal.) 800; Thompson v. Williams, 60 Atl. (Md.) 26; Norris v. Clark, 57 Atl. (N. H.) 334.

Lord Coke in Twyne's Case, 2 Coke's Reports, 80, referring to an alleged fraudulent transaction, said:

"That this gift has the signs and marks of fraud:

"1. Because the gift is general, without exception of his apparel or anything of necessity; * * *

"2. The donor continued in possession and used them as his own; and by reason thereof he traded and trafficked with others, and defrauded and deceived them.

"3. It was made in secret, * * *

"5. Here was a trust between the parties for the donor possessed all, and used them as his proper goods; and fraud is always apparelled and clad with a trust, and a trust is the cover of fraud.

"6. The deed contains, that the gift was made honestly, truly, and *bona fide* * * *."

In discussing a case involving an alleged fraudulent conveyance, Justice Daniels, in referring to the rule stated by Lord Coke, said:

"Here are the very *clausulae inconsuetae* pointed to in *Twyne's case*, as the sure badges of that which they are intended to hide." Taylor v. Taylor, 12 L. Ed., 1040.

We come now to the consideration of the evidence before us in this case. The execution of the instruments of conveyance is admitted. The indebtedness scheduled by the bankrupt consisted of two items: one to his brother of something over $4000, and the other to his mother of $2000. The validity of the latter item is challenged by the recitals of the schedule. The debtor had a few other creditors whose claims were small. The personal property conveyed by the bill of sale consisted of a considerable quantity of live stock, grain, farm implements

and machinery. There was a chattel mortgage upon the cattle included in the bill of sale for about $2600.00. The evidence as to the value of appellee's undivided interest in the 440-acre tract of land is conflicting. It was apparently worth somewhere between $2000.00 and $3000.00. A portion of the property conveyed by the bill of sale was exempt from execution. These conveyances were executed four days after appellee's brother commenced action against him on the note which he admits is genuine. Mrs. Warrington testified that she knew of the commencement of the action prior to the date on which the instruments were executed. Both she and her husband testified that she loaned him $550.00 shortly after their marriage; that she received the money from her father's estate and as a gift from her mother; that she took a note for the amount in good faith; that the same has been repeatedly renewed; that it was in existence on the date of the instruments, and that there was due her thereon $2498.00; that after the conveyances were executed, and on the same day, the note was destroyed. The husband testified that it has always been his custom to destroy notes when paid. This alleged indebtedness is claimed to have been the consideration for the conveyances. Both appellees testified to the good faith of the transaction; that it was not for the purpose of hindering or delaying creditors, but solely for the purpose of paying the indebtedness owing by the husband to the wife. There is no denial by any witness of any of the testimony of appellees, except that two or more witnesses, relatives of the family, testified that they had heard Mrs. Warrington say that if she had put her money at interest it would now be worth a considerable sum of money. This testimony was introduced on behalf of appellant. Counsel in the examination of appellees sought by the aid of the transcript of their testimony in the bankruptcy proceedings to show contradictory statements. This appellant was not permitted to do for the purpose of impeachment. It was, however, permissible for counsel for appellant to use the transcript of the testimony in the other proceedings for the purpose of refreshing their recollection. The existence of the indebtedness testified to by appellees, the execution and destruction of the notes, are not denied by any witness, nor are the facts shown to be different than claimed by them. The relationship of the parties, the time and circum-

stances of the transaction, quite naturally produce some suspicion as to its good faith and genuineness. A few small circumstances perhaps amounting to badges of fraud are shown, but they are all too trivial to overcome the positive testimony introduced in the case. The burden was upon appellant to prove the allegations of his petition. The consideration was adequate, and only, if at all, but slightly excessive. What appellant did prove by the affirmative testimony is that the transaction was as claimed by appellees. Appellant is entitled in this case to the benefit of the full probative value of the evidence. It must be weighed in the light of all of the facts and circumstances shown. Appellant must be held to vouch for the credibility of the witnesses called by him. He may not say that their testimony is false or unworthy of belief. If, however, in spite of their testimony, he has, by the direct or other testimony of additional witnesses, proven the allegations of his petition, he is entitled to the relief sought. This is likewise true if the evidence as a whole, when properly analyzed and applied, sustains the allegations of fraud. If the court accepts the testimony of appellees as true, then appellant clearly cannot recover; if, on the other hand, it is rejected, then appellant is left without the necessary proof to make out a case. There is no escape from the conclusion reached by the trial court, and the judgment and decree is—Affirmed.

WAGNER, C. J., and DE GRAFF, FAVILLE, and ALBERT, JJ., concur.