STATE BANK OF WOOLSTOCK, Appellant, v. C. A. SCHUTT et al., Appellees.

**FRAUDULENT CONVEYANCES:** Family Relations—Conveyances
1  to Wife of Debtor—Evidence.  Evidence reviewed, and *held* insufficient to show that a conveyance of land to grantor's daughter-in-law was in fraud of the creditors of the son, though the land was sold for less than its value and the son signed the notes for the major part of the purchase price.

PRINCIPLE APPLIED:  See No. 4.

**FRAUDULENT CONVEYANCES:** Family Relations—Conveyance
2  to Wife of Debtor.  It is no fraud for a father to so assist his insolvent son and family that the creditors of the son will not reap the fruits of the father's bounty.  So *held* where the father of the debtor sold land to his daughter-in-law for less than its value.

PRINCIPLE APPLIED:  See No. 4.

**FRAUDULENT CONVEYANCES:** Family Relations—Conveyances
3 **to Wife of Debtor—Consideration—Presumption.** There is no
presumption that the consideration paid by a wife for a con-
veyance of land was paid or furnished by her husband.

**FRAUDULENT CONVEYANCES:** Family Relations—Right of In-
4 **heritance—Relinquishment—Effect.** A prospective or possible
right of inheritance is not subject to levy or sale on execution; it
follows that the relinquishment of such prospective or possible
right by the holder thereof in order to enable his wife to acquire
property *in her own absolute right*—no secret trust being reserved
in the one relinquishing—is no fraud on the creditors of the one
so relinquishing, he contributing, to the consummation of the deal,
no property of his own subject to levy.

PRINCIPLE APPLIED: Action to subject lands standing in
the name of the wife to the satisfaction of a judgment against the
husband. The conveyance was made solely to the wife by her
father-in-law, Christian Schutt, a year before the judgment was
rendered, but at a time when the husband was insolvent. The land
was worth $20,000. The deed recited a consideration of $17,600,
but the actual amount paid and agreed to be paid was $1,000
cash, paid by the daughter-in-law from her own means, and $12,000
in notes, secured by mortgage, both signed by the daughter-in-law
*and her husband*—grantor's son. The deed contained this clause:
"In consideration of this deed  . . .  Emma Schutt and C. A.
Schutt hereby relinquish all their rights and interests in the Chris-
tian Schutt estate." Christian Schutt did not know that such a
clause was in the deed. The daughter-in-law did. The grantor
knew that he was selling the land for less than it was worth, and
intended the value in excess of $13,000 to be a gift to the daughter-
in-law. The husband contributed nothing to the deal except his
possible right of inheritance. *Held,* (a) no fraud was shown and
(b) the land could not be charged with the husband's debts to the
extent of $4,600, on the theory that such was the value placed on
his possible right of inheritance.

**FRAUDULENT CONVEYANCES:** Family Relations—Secret Trust
5 **—Burden of Proof.** The burden to show that a wife, the sole
grantee in a deed, is holding the land in secret trust for her hus-
band, is on him who so alleges.

**DESCENT AND DISTRIBUTION:** Right of Inheritance—Relinquish-
6 **ment—Evidence.** A clause in a deed in which a wife is the sole
grantee, reciting as part of the consideration, a relinquishment
by the husband of his possible or prospective right of inheri-
tance in the estate of the grantor, is not binding on the hus-

band, in the absence of a showing that he agreed to or ratified such relinquishment.

*Appeal from Wright District Court.—C E. ALBROOK, Judge.*

FRIDAY, MARCH 10 1916

SUIT in equity in the nature of a creditor's bill to subject certain real estate, the title to which is in the defendant Emma Schutt, to the payment of certain judgments rendered in plaintiff's favor against C A Schutt  The bill was dismissed, and plaintiff appeals.—*Affirmed*

*Birdsall & Birdsall,* for appellant.

*McGrath & Archerd* and *Robert Healy,* for appellees.

WEAVER, J.—The plaintiff bank, having recovered judgments against the defendant C. A. Schutt to the amount of about $8,000, brings this action to subject to the payment thereof a certain quarter section of land held

1. FRAUDULENT CONVEYANCES: family relations: conveyances to wife of debtor: evidence.

in the name of Emma Schutt, who is the judgment debtor's wife. The facts elicited on the trial are brief and uncomplicated. The only witnesses examined were the defendant Emma Schutt, and Christian Schutt who is the father of C. A. Schutt, the judgment defendant  The testimony of these witnesses was to the following effect: That, something more than a year prior to the recovery of the judgments above mentioned, but after C. A. Schutt had become financially embarrassed, the father of C. A. Schutt, who was then the owner of a certain quarter section of land in Wright County, conveyed it by warranty deed to his said daughter-in-law.  The recited consideration for such transfer was $17,600.  On the same day, Emma Schutt paid to the grantor the sum of $1,000 in money, and in addition thereto gave her promissory note for $12,000, secured by mortgage on the land. C. A. Schutt, the judgment defendant, united with his wife

in the execution of the note and mortgage. Emma Schutt was the sole grantee named in the deed. In the body of the deed following the granting clause, and before the covenants of warranty, is another clause reading as follows:

"In consideration of this deed, the parties of the second part, Emma Schutt and C. A. Schutt, hereby relinquish all their rights and interests in the Christian Schutt estate."

There is evidence tending to show that at the time of the conveyance the land was of the reasonable value of $20,000. There is nothing in the record tending to show that, prior to said conveyance, the judgment debtor or his wife had any right or interest, legal or equitable, in the land in controversy, and whatever title they or either of them now have is referable to the deed above mentioned. The grantor is a man of foreign birth, and his testimony respecting the circumstances of the conveyance is somewhat confused by his inability to freely express himself in English words; but fairly construed, he says that he offered to sell the land to his son's wife for considerably less than it was worth, and expressed his willingness to convey it to her for $13,000. The son, C. A. Schutt, said *he* could not buy it, for he had no money; but his wife asked and was given time to consider it until she could see her father, and later accepted the offer. · The transaction was then consummated by the execution and delivery of the deed, the giving of the note and mortgage, and the making of the cash payment. The grantor insists that he knew nothing of the clause in the deed by which his son and wife relinquished their right to any inheritance from him, and avers that the value of the land in excess of $13,000 was considered by him as a gift to the grantee. The grantee concedes, however, that she received the deed knowing that it included said clause and understood its purport, but asserts herself to have been the real purchaser of the land and to be now the owner thereof in her own right.

I. The appellant first argues that the evidence, meager as it is, discloses enough to warrant and require the inference

that the insolvent husband was the real purchaser, and that
the title to the land was taken in the wife's
name, to hinder, delay and defraud his
creditors. The ground thus taken is unten-
able. It may be conceded that the debtor's
father desired by this conveyance to assist
the insolvent son and his family, and to do this in a manner
which would not expose the property given or conveyed to
any hazard of subjection to the payment of the son's debts.
In that there was no fraud. He was under no obligation to
pay his son's debts, and, if he saw fit to give the land to his
son's wife or to sell it to her at less than its real value, he
neither defrauded nor assisted in defrauding the son's
creditors. On the contrary, if he thereby provided or secured
to the debtor's family a means of support or protection against
impoverishment at the hands of an unfortunate or incom-
petent or spendthrift husband, it is an act to be commended,
rather than condemned. *Wells v. Kindler,* (Neb.) 147 N. W.
687.

2. FRAUDULENT CONVEYANCES: family relations: conveyance to wife of debtor.

It is suggested, if we understand counsel, that, while this
might be true as to gifts or voluntary conveyances to the wife,
yet, the deed having been made to the wife as upon a contract
of purchase for a stated consideration, there
is a presumption that such consideration was
furnished or paid by her husband. No prece-
dent for a holding as broad as counsel here
states it has been called to our attention, and,
if it ever prevailed, it was as a rule of evi-
dence, the reasons for which no longer exist in this state,
where the wife, equally with the husband, may buy and sell
and transact business generally as freely as if she were un-
married. True, where relatives or members of the same fam-
ily have business dealings together which may result in detri-
ment to the creditors of one of the parties, the court will
scrutinize the transaction closely to ascertain its real char-
acter, but the mere fact of relationship between a buyer and

3. FRAUDULENT CONVEYANCES: family relations: conveyances to wife of debtor: consideration: presumption.

seller carries with it no presumption of fraud. Giving this case candid consideration, we find nothing therein to justify the inference that C. A. Schutt was the real buyer of the land, or that the wife holds the title in secret trust for his benefit. So far as shown, the only payment made upon the purchase price was made by the wife with her own means, and this is not seriously denied in argument. At least, there is nothing to show that her husband contributed thereto. The fact that the debtor joined in making the note for the deferred payment, while consistent with the theory of the plaintiff, is not inconsistent with the theory of the defendants, and, standing alone, is of little or no probative value to establish the charge of fraud. The plaintiff is not defrauded, no matter what be the truth as to the transaction between the defendants and Christian Schutt, unless some property or property right of C. A. Schutt which might otherwise have been subject to levy or seizure upon execution in favor of plaintiff has been removed or concealed or otherwise placed beyond the reach of such writ. The record is barren of such showing. It is conceded that, at the date of the deed in question, C. A. Schutt was insolvent, and is still insolvent. It does not appear that he then had, or has since acquired, any property or means which could have been subjected to the payment of the debt to plaintiff, or that he then had or has since acquired any means or resource from which he could have contributed to the purchase of the land. The burden to establish the charge of fraud was upon the plaintiff, and we are of the opinion that the showing in this respect is entirely insufficient.

II.    It is next said (and it is upon this proposition that appellant lays chief stress) that the difference of $4,600 between the consideration named in the deed ($17,600) and the amount of the note and money paid at that

**4. FRAUDULENT CONVEYANCES: family relations: right of inheritance: relinquishment: effect.**

time ($13,000) represents the value which the parties placed upon C. A. Schutt's prospective right of inheritance mentioned in the deed, and that therefore he should be held,

for the purposes of this case, the equitable owner of the land to the extent of such contribution to its purchase, and plaintiff may to that extent enforce its judgment against the property. The argument has the merit of ingenuity, but is it sound? While it is true that we have several times held to the rule that a prospective right of inheritance may be assigned, we have never held that such right is property of such tangible character that it may be seized or levied upon or subjected to sale for the payment of debts. It is at best a mere possibility, the assignment of which, if apparently fair, equity will recognize and enforce only after the death of the ancestor leaving an estate in which the assignor would otherwise be entitled to share. Until such time, it does not take effect, and then operates by way of estoppel. *Jones v. Jones,* 46 Iowa 466, 473. C. A. Schutt's prospective right of inheritance not being property which plaintiff could have subjected to the payment of its judgments, he was chargeable with no fraud in assigning or relinquishing it, even though in consideration therefor he procured to be conveyed to his wife property which, had he taken it to himself, would have been subject to levy. If he gives away that which is not subject to levy for the payment of his debts, his creditors are not wronged, and the title or right of the donee in the thing so disposed of cannot be disturbed at their suit. If Schutt could have assigned his prospective inheritance to his wife and the assignment be held good as against his creditors—and we are quite clear that he could have done so—then for like reason he could relinquish that right to his father in consideration of a conveyance by the latter to his wife, and the creditors would have no valid ground of complaint. Counsel for appellant, apparently appreciating the force of this suggestion, seek to avoid its effect in the following manner. They say:

"If the agreement to relinquish his interest in the grantor's estate on the part of C. A. Schutt be treated as invalid or for any reason disregarded, then the difference of

$4,600 representing the unpaid or unsecured consideration must be regarded as a gift to him in the land, and the taking of title thereto to this extent was a fraud upon his creditors. Whatever C. A. Schutt received from his father in the transaction rightfully belonged to his creditors, and where the effect of his and his wife's conduct was to place it beyond the reach of his creditors, a fraudulent purpose will be ascribed to such conduct and she will be held to hold the property in trust for his creditors.''

But we think it must be said that there is a visible limp in the logic of the argument at this point. The father was under no duty or obligation to sell, give or convey the land to his son. He could, if he chose, rightfully sell, give or convey it to his son's wife without exposing it to seizure by the son's creditors. Whether such conveyance was upon a good or sufficient or adequate consideration was wholly immaterial, so far as such creditors were concerned. How, then, can it be said that the failure or invalidity of a part of the consideration for the deed to the *wife* operates to convert the conveyance to that extent into a gift to her *husband?* It may be conceded, for the purposes of this case, that, had the debtor furnished a part of the consideration in money or other thing of value which was subject to the levy of plaintiff's execution, the conveyance would be held fraudulent to that extent, and the wife, to that extent, would be held a trustee of the title for her husband; but, as we have already said, if his contribution to the consideration was in the form of something which the creditor could not have seized or subjected to his claim, and the land was conveyed to the wife in her own right, the creditor thereby suffers no prejudice. If, for example, the debtor owned a homestead of greater or less value against which the judgment could not have been enforced, his conveyance of the title to his wife or to his father would not be fraudulent as against the judgment creditor, whether such conveyance be made as a gift or for a valuable consideration, or for a consideration moving to his wife instead of to himself.

The conversion of a property or right upon which the creditor neither has nor can have any legal or equitable claim for the payment of a defendant's debt, into other property or right for the benefit of a third person, is a transaction in which there is no element of fraud. Of course, if it be shown that the real purpose of the transaction is to ac-

5. FRAUDULENT CONVEYANCES: family relations: secret trust: burden of proof.

quire property to be held in secret trust for the judgment debtor, a different rule would obtain; but, in the absence of any showing that the debtor contributed to the purchase of the land anything which might otherwise have been subjected to the payment of the judgments, the burden is upon the plaintiff to prove the existence of such trust, and in this respect, we repeat that there is a failure of proof. The authorities cited by the plaintiff are not at variance with the holdings or conclusions above stated.

It may be added in conclusion that the discussion upon this point is largely academic, because the record is without a sufficient basis of fact to justify the application of the rule urged by appellant, even though, as an ab-

6. DESCENT AND DISTRIBUTION: right of inheritance: relinquishment: evidence.

stract question, we were to concede its soundness. The only evidence of the so-called relinquishment of C. A. Schutt's prospective right of inheritance is found in the deed made by Christian Schutt to Emma Schutt. C. A. Schutt, who alone could make such relinquishment, is not a party to that deed, and he is in no manner bound by its terms. So far as the record shows, he never agreed to make such relinquishment, and the father swears that he did not exact it, did not know that such clause was in the deed, and that such agreement was no part of the consideration for the conveyance. The only basis for a contrary conclusion is the fact that the relinquishment clause is found in the deed of Christian Schutt to Emma Schutt, unsigned and unacknowledged and unratified by C. A. Schutt. To say that such relinquishment was a consideration for the conveyance is not only to indulge in

mere conjecture but to wholly disregard all the evidence on that question. We may still further add that a relinquishment by a son to his parent of his right to inherit from such parent is a mere idle form. The father thereby obtains nothing which he does not already have, the right to dispose of his own estate as he may please.

The decree below was right, and it is—*Affirmed.*

EVANS, C. J., DEEMER and PRESTON, JJ., concur.